IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 10-cv-01327-ZLW-CBS

CLARA RAQUEL EPSTEIN, M.D.,

    Plaintiff,

v.

THE OHIO STATE UNIVERSITY,
OHIO STATE BOARD OF TRUSTEES,
OHIO STATE UNIVERSITY MEDICAL CENTER,
OHIO STATE UNIVERSITY MEDICAL CENTER SERVICES BOARD,
OHIO STATE COLLEGE OF MEDICINE,
CAROLE MILLER, M.D., individually,
ANDREW THOMAS, M.D., individually, and
JOHN OGDEN, M.D., individually,

    Defendants.

---

**ORDER**

---

The matter before the Court is Defendants' Motion To Dismiss (Doc. No. 5). The Court has reviewed carefully the moving and responding papers and the applicable legal authority.

**I.    Plaintiff's Claims**

Plaintiff, who currently is a Colorado resident, filed this action on June 9, 2010,[1] asserting that while employed as a medical resident at the Ohio State University Medical Center (OSU) in Columbus, Ohio from 2003 to 2007, she was discriminated against on the basis of her gender (female), religion (Jewish), national origin (Mexican-

---

[1] Counsel for Plaintiff is advised, for future reference, that pleadings filed in this Court must be double-spaced. See D.C.COLO.LCivR 10.1E. Filed papers should also bear page numbers.

American), and age (46 at the time this action was filed). Plaintiff also alleges that she was sexually harassed and subjected to a hostile work environment while at OSU, and that she was wrongfully discharged from OSU "through constructive termination."[2] Plaintiff further alleges that, after she moved to Colorado following her discharge from OSU, Defendant Andrew Thomas, M.D. made false and slanderous remarks about her to the company performing her background check as part of her medical credentialing process in Colorado, and that Defendant Thomas and unidentified OSU staff members, or other persons affiliated with OSU, made false statements to the Colorado Board of Medical Examiners regarding Plaintiff's board certification.

Plaintiff asserts nine claims for relief, for: (1) Discrimination and Disparate Treatment - Title VII, against all Defendants,[3] (2) Sexual Harassment - Title VII, against Defendants OSU and John Ogden, M.D., (3) Wrongful Termination - Hostile Work Environment - Title VII, against all Defendants, (4) Retaliation - Title VII, against all Defendants, (5) Wrongful Discharge - Constructive Termination - Tort Claim, against Defendants OSU and Affiliates, (6) Slander - Tort Claim, against Dr. Miller and Dr. Thomas, (7) Intentional Interference With Advantageous Relations - Tort Claim, against all Defendants except Dr. Ogden, (8) Outrageous Conduct - Tort Claim, against Dr. Miller and Dr. Thomas, and (9) Negligent Infliction of Emotional Distress - Tort Claim, against Dr. Miller and Dr. Thomas.

---

[2] Complaint ¶ 98.

[3] Although Plaintiff includes an age discrimination allegation under her Title VII disparate treatment claim, Title VII does not address age discrimination. See 42 U.S.C. § 2000e-2.

Defendants move to dismiss this action without prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Defendants move, in the alternative, for an order transferring this case to the United States District Court for the Southern District of Ohio, Eastern Division.

## II. Analysis

### A. Personal Jurisdiction

The plaintiff has the burden of proving that personal jurisdiction exists.[4] However, where, as here, the motion to dismiss based on lack of personal jurisdiction is determined without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.[5] In deciding whether the plaintiff has made such a showing, the Court resolves all factual disputes in the plaintiff's favor.[6]

The determination of specific personal jurisdiction[7] requires a two-step inquiry. First, the Court asks whether the nonresident defendant has minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there.[8] "A defendant may reasonably anticipate being subject to suit in the forum state if the defendant has purposefully directed his activities at residents of the forum, and the

---

[4] Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

[5] TH Agriculture & Nutrition, LLC v. ACE European Group Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007)

[6] Id.

[7] There is no indication that the "continuous and systematic" contacts required to establish general personal jurisdiction exist in this case. See Helicopteros Nacionales de Colombia v. Hall, 444 U.S. 408, 415 (1984).

[8] TH Agriculture, 488 F.3d at 1287.

3

litigation results from activities that arise out of or relate to those activities."[9] The defendant must have engaged in activities that create a "substantial connection to the forum state. Thus, courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant."[10] "The court must examine "the quantity *and* quality of *Defendants'* contacts with [the forum state] to determine whether the district court's assertion of personal jurisdiction over Defendants comports with due process,"[11] and "random, fortuitous, or attenuated contacts" are insufficient.[12]

Second, if there are minimum contacts, then the Court inquires as to whether the "exercise of personal jurisdiction offends traditional notions of fair play and substantial justice."[13] "This question turns on whether the exercise of personal jurisdiction is 'reasonable' under the circumstances of a given case."[14] The court assesses reasonableness by weighing the following five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the

---

[9]Id. (internal quotations and citations omitted).

[10]OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (10th Cir. 1998) (internal citation omitted).

[11]Id.

[12]Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal quotations omitted).

[13]TH Agriculture, 488 F.3d at 1287 (internal quotations and citation omitted).

[14]Id. (citation omitted).

several states in furthering fundamental substantive social policies.[15] If the minimum contacts are weak under the first step, then the defendant does not need to make a strong showing of unreasonableness under the second step.[16]

It appears to be undisputed that all of the Defendants in this case reside or are located in Ohio. Further, the vast majority of factual allegations in the Complaint pertain to alleged events which occurred in Ohio. Indeed, out of a total of 77 paragraphs of factual allegations in the Complaint, only three contain allegations having any relationship whatsoever to the state of Colorado. Those paragraphs state:

> 74. On June 16, 2008, Dr. Epstein [Plaintiff] was notified by the Colorado Board of Medical Examiners that an anonymous party had alleged that she was falsely representing herself as a board certified neurosurgeon residing in the State of Colorado. The Board conducted an investigation and on March 24, 2009, determined that the allegations were unfounded and dismissed any further administrative action against Dr. Epstein. Upon information and belief the anonymous party was affiliated with the OSU Medical Center staff.[17]
>
> 75. Upon information and belief, on April 23, 2009, during the course of Dr. Epstein's credentialing process in Colorado, Dr. Thomas was contacted by R.T. Welter and Associates, Inc., as part of a background investigation. Dr. Thomas made false and slanderous remarks regarding Dr. Epstein and represented to R.T. Welter and Associates, Inc. that Dr. Epstein was not a neurosurgeon, should not be

---

[15] Burger King, 471 U.S. at 477.

[16] TH Agriculture, 488 F.3d at 1292; OMI Holdings, 149 F.3d at 1092.

[17] It appears that the allegations in paragraph 74 are made in support of Plaintiff's Retaliation claim (Claim 4) only.

5

>             using the title of neurosurgeon, and that her
>             license to practice medicine was restricted.[18]
>
> 76.     Upon information and belief, Dr. Thomas and/or other
>         staff members at OSU further falsely represented to
>         the Colorado Board of Medical Examiners that Dr.
>         Epstein was not board certified and did not specialize
>         in neurosurgery. In fact, Dr. Epstein was certified by
>         the American Board of Clinical Neurological Surgery
>         on March 28, 2008.[19]

Additionally, Plaintiff states in her affidavit that she was advised "by R.T. Welter & Associates" that the staff person who spoke with Defendant Thomas identified herself as being from R.T. Welter in Colorado, and that this person advised Defendant Thomas that she was assisting Plaintiff in becoming credentialed exclusively at several local Colorado hospitals.[20] Plaintiff does not allege that anyone other than Defendant Thomas and the unidentified person "affiliated with the OSU Medical Center staff" engaged in any conduct relating to the state of Colorado.

Plaintiff argues that because Dr. Thomas allegedly knew that Plaintiff resided in Colorado and that it was foreseeable that his allegedly defamatory statements would result in injury to Plaintiff in Colorado,[21] the cases of Calder v. Jones,[22] Dudnikov v.

---

[18] It appears that the allegations in paragraphs 75 are made in support of Plaintiff's Retaliation claim (Claim 4) and Slander claim (Claim 6) only.

[19] It appears that the allegations in paragraphs 76 are made in support of Plaintiff's Retaliation claim (Claim 4), Slander claim (Claim 6), and claim for "Intentional interference With Advantageous Relations" (Claim 7) only.

[20] Affidavit of Clara Raquel Epstein, M.D. (Doc. No. 17-1) ¶ 4. The Court agrees with Defendants that the cited affidavit testimony constitutes hearsay under Fed. R. Evid. 802; however, there is authority indicating that hearsay evidence may be considered on a Rule 12(b)(2) motion. See Dairy Health Products, Inc. v. IBA, Inc., 2008 WL 345846 (D. Utah Feb. 6, 2008) (citing Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991)).

[21] See Plaintiff's Response (Doc. No. 17) at 4-5.

[22] 465 U.S. 783 (1984).

Chalk & Vermilion Fine Arts, Inc.,[23] and Clemens v. McNamee,[24] "all dictate that Dr. Thomas and OSU have purposely directed tortious activity within Colorado."[25]  In Calder, which was applied by Dudnikov and Clemens, the United States Supreme Court set forth the "effects test," under which a court may exercise personal jurisdiction over a nonresident defendant where the defendant expressly aimed an intentional act at the forum state with the knowledge that the brunt of the injury would be felt in the forum state.[26]  Here, Plaintiff has made the minimal prima facie showing that Defendant Thomas made allegedly injurious and slanderous statements to entities in Colorado involved in assessing Plaintiff's medical credentialing or certification in Colorado, knowing that Plaintiff was living in Colorado and attempting to practice medicine there.  Plaintiff has failed to make such a prima facie showing with respect to any other Defendant in this case, and, in particular, her allegations concerning unidentified persons allegedly "affiliated with" OSU are insufficient to establish minimum contacts with Colorado on the part of OSU.[27]  Thus, under the applicable case law, the Court finds that Plaintiff has made the requisite showing of minimum contacts as to Defendant Thomas *only*.

---

[23] 514 F.3d 1063 (10th Cir. 2008).

[24] 2010 WL 3175979 (5th Cir. Aug. 12, 2010).

[25] Plaintiff's Response (Doc. No. 17) at 5.

[26] See Dudnikov, 514 F.3d at 1072; see also Sunlight Saunas, Inc. v. Sundance, Sauna, Inc., 427 F. Supp.2d 1011, 1020 (D. Kan. 2006) (citing Calder, 465 U.S. at 788-90).

[27] Plaintiff has, further, failed to argue or establish minimum contacts on the part of OSU based upon principles of agency.

With respect to the second step of the personal jurisdiction analysis, the parties have not mentioned the five factors, set forth above, which must be weighed to determine whether the "exercise of personal jurisdiction offends traditional notions of fair play and substantial justice."[28] Defendants, the moving parties here, cannot prevail on their argument that the Court lacks personal jurisdiction over Defendant Thomas without addressing the factors which determine the resolution of the second prong of the personal jurisdiction analysis.[29] The Court concludes, based upon the present motion, that it has personal jurisdiction over Defendant Thomas only.

**B.     Venue**

Defendants also contend that venue is improper in this judicial district. 28 U.S.C. § 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Additionally, claims brought under Title VII are properly venued in:

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant

---

[28]TH Agriculture, 488 F.3d at 1287.

[29]See 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.2 (3d ed. 2002) (after the plaintiff has made a prima facie showing of minimum contacts, "it becomes the defendant's burden to convince the court that the assertion of personal jurisdiction would be unreasonable.").

8

> to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.[30]

Plaintiff states in a wholly conclusory fashion that "Plaintiff's claims of wrongful retaliation all occurred in Colorado,"[31] but provides no supporting legal authority for, or further elaboration on, this statement. The Court has not located any controlling authority directly on point; however, in Johnson v. Washington Gas Light Co.,[32] the United States District Court for the District of Columbia indicated that "[t]he discriminatory activities, retaliation, and reprisal [of] which the Plaintiff has complained" occurred, for purposes of Title VII's venue provision, not where the defendant was working at the time, but, rather, where the allegedly discriminatory employment decision was made.[33] Further, in this case, Plaintiff claims retaliation based upon her employment in, and alleged protected conduct in, the state of Ohio. The Court is not persuaded on this motion that the allegedly unlawful retaliation occurred in Colorado, as opposed to Ohio. None of the other bases for venue set forth in 42 U.S.C. § 2000e-5(f)(3) or 28 U.S.C. § 1391(b) are present here, and Plaintiff does not even address venue with respect to any claim other than her retaliation claim. The Court grants Defendants' motion as to improper venue.

---

[30] 42 U.S.C. § 2000e-5(f)(3).

[31] Plaintiff's Response (Doc. No. 17) at 5-6. The Court notes that Plaintiff in fact has pleaded only one claim for Retaliation.

[32] 89 F. Supp. 2d 45 (D.D.C. 2000).

[33] Id. at 46 n.3.

9

**C.     Transfer**

When a court concludes that venue is improper, it may dismiss the action or, in the interests of justice, transfer it to a district in which venue is proper.[34] Plaintiff requests that, if the Court finds personal jurisdiction or venue to be lacking, this action be transferred to the United States District Court for the Southern District of Ohio, rather than dismissed, since if the action is dismissed Plaintiff will not be able to re-file her Title VII claims in Ohio because the applicable limitations period will have expired. Defendants themselves request, in the alternative, that this action be transferred to the United States District Court for the Southern District of Ohio, Eastern Division.  In the interests of justice, pursuant to 28 U.S.C. § 1406(a), the Court will transfer this case to the United States District Court for the Southern District of Ohio, Eastern Division, where it is properly venued.

Accordingly, for the reasons set forth above, it is

ORDERED that Defendants' Motion To Dismiss (Doc. No. 5) is granted to the extent that it requests transfer of this case to the United States District Court for the Southern District of Ohio, Eastern Division.  It is

---

[34]See 28 U.S.C. § 1406(a).

FURTHER ORDERED that this action hereby is transferred to the United States District Court for the Southern District of Ohio, Eastern Division pursuant to 28 U.S.C. § 1406(a).

DATED at Denver, Colorado, this 4th day of October, 2010.

BY THE COURT:

_Zita Leeson Weinshienk_
_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court